1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2020

SEAN F. McAVOY, CLERK

4

5      **UNITED STATES DISTRICT COURT**

6      **EASTERN DISTRICT OF WASHINGTON**

7   MICHELLE P.,[1]                          No. 1:20-cv-03040-MKD
                     Plaintiff,

8                                            ORDER DENYING PLAINTIFF'S
        vs.                                  MOTION FOR SUMMARY
9                                            JUDGMENT AND GRANTING
    ANDREW M. SAUL,                          DEFENDANT'S MOTION FOR
10  COMMISSIONER OF SOCIAL                   SUMMARY JUDGMENT
    SECURITY,
11                   Defendant.              ECF Nos. 21, 22

12          Before the Court are the parties' cross-motions for summary judgment.  ECF

13  Nos. 21, 22.  The parties consented to proceed before a magistrate judge.  ECF No.

14  8.  The Court, having reviewed the administrative record and the parties' briefing,

15

16

17  _____

18  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19  identifies them by only their first names and the initial of their last names.  *See*

20  LCivR 5.2(c).

    ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 21, and grants Defendant's motion, ECF No. 22.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 22, 2012, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of June 4, 2012.  Tr. 14, 92, 211-19.  The application was denied initially and on reconsideration.  Tr. 112-14; Tr. 119-21. Plaintiff appeared before an administrative law judge (ALJ) on June 12, 2014, but she was unrepresented and requested time to obtain a representative.  Tr. 33-47. Plaintiff obtained a representative and again appeared before the ALJ on April 20, 2015.  Tr. 48-91.  On October 2, 2015, the ALJ denied Plaintiff's claim.  Tr. 11-29. Plaintiff appealed the denial to the Appeals Council and then this Court, which resulted in a remand.  Tr. 799-816.  Plaintiff appeared before an ALJ for a remand hearing on January 7, 2020.  Tr. 743-67.  On January 24, 2020, the ALJ again denied Plaintiff's claim.  Tr. 722-42.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2016, did not engage in

substantial gainful activity from June 4, 2012 through June 30, 2016.  Tr. 727.  At

step two, the ALJ found that Plaintiff has the following severe impairment: lumbar

spine spondylolisthesis.  Tr. 728.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  *Id*.  The ALJ then concluded that through the date last insured,

Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff could] stand in one place for one hour at a time for a total of six
> hours out of an 8-hour workday with normal breaks; she [could] walk for
> walk [sic] for two hours at a time for a total of six hours out of an 8-hour
> workday with normal breaks; and she [could] sit for one hour at a time out of
> an 8-hour workday with normal breaks.  She [could] perform work that does
> not require 90 degree bending at the waist as an essential element of job; she
> [could] occasionally reach overhead; and she [could] occasionally stoop,
> kneel, crouch, and crawl.

Tr. 728-29.

At step four, the ALJ found Plaintiff was capable of performing her past

relevant work as a cashier II and food sales clerk.  Tr. 734.  Alternatively, at step

five, the ALJ found that, considering Plaintiff's age, education, work experience,

RFC, and testimony from the vocational expert, there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform, such as

storage facility rental clerk, fast food worker, and marker.  Tr. 735.  Therefore, the

ALJ concluded Plaintiff was not under a disability, as defined in the Social

ORDER - 7

Security Act, from the alleged onset date of June 4, 2012, through the date last insured.  Tr. 736.

Per 20 C.F.R. § 404.984, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-three analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ properly evaluated lay witness evidence.

ECF No. 21 at 2.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly evaluated the opinions of Anthony Sciascia, M.D.; Karen LaJambe, ARNP; John Howe, M.D.; Christina Blanchette, PA-C; Randall Chestnut, M.D.; Robert Hander, M.D.; William Pace III, M.D.; and Rox Burkett, M.D.  ECF No. 21 at 5-14.

ORDER - 8

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 404.1513 (2013).[2]  However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. § 404.1513(d) (2013).[3]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

---

[2] The regulation that defines acceptable medical sources is found at 20 C.F.R. § 404.1502 for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

[3] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 404.1502c for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 10

1    *1. Temporary Medical Opinions*

2    Treating providers Dr. Sciascia, Ms. LaJambe, Dr. Howe, Ms. Blanchette,

3    and Dr. Chestnut, rendered opinions regarding Plaintiff's functioning between June

4    2012 and September 2013.  Tr. 335, 340-41, 344, 347, 352, 359, 361, 364, 373,

5    377, 411, 414, 461, 463, 476,493-95, 506, 508, 572.  These opinions primarily

6    addressed temporary limitations, such as Dr. Sciascia's June 4, 2012 opinion that

7    Plaintiff could not return to work for five to seven days,  Tr. 411, and Ms.

8    LaJambe's June 12, 2012 opinion that Plaintiff should be off work for one week,

9    Tr. 377.  Through 2012, there are multiple opinions restricting Plaintiff to part-time

10   or no work.  Tr. 335, 340-41, 344, 347, 352, 359, 361, 364, 373, 414, 463, 572.  In

11   2013, there are several opinions and examinations that Plaintiff argues demonstrate

12   her inability to work.  ECF No. 21 at 7 (citing Tr. 461, 476, 493, 506, 508).  The

13   ALJ did not address any of the opinions.  The ALJ must evaluate every medical

14   opinion received according to a list of factors set forth by the Social Security

15   Administration.  20 C.F.R. § 404.1527(c).  "Where an ALJ does not explicitly

16   reject a medical opinion or set forth specific, legitimate reasons for crediting one

17   medical opinion over another, he errs."  *Garrison v. Colvin*, 759 F.3d 995, 1012

18   (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

19   The harmless error analysis may be applied where even a treating source's opinion

20   is disregarded without comment.  *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir.

1    2015).  An error is harmful unless the reviewing court "can confidently conclude

2    that no ALJ, when fully crediting the [evidence], could have reached a different

3    disability determination."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056

4    (9th Cir. 2006).

5         Plaintiff argues the opinions in total cover more than a year and thus meet

6    the duration requirement.  ECF No. 21 at 6-9.  Temporary limitations are not

7    enough to meet the durational requirement for a finding of disability.  20 C.F.R. §

8    404.1505(a) (requiring a claimant's impairment to be expected to last for a

9    continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A)

10   (same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir.

11   2008) (affirming the ALJ's finding that treating physicians' short-term excuse from

12   work was not indicative of "claimant's long-term functioning").  However, in

13   January 2013, Dr. Chestnut and Ms. Blanchette opined Plaintiff could not return to

14   the job where Plaintiff had sustained an on-the-job injury, but noted Plaintiff had

15   made good progress and Dr. Chestnut would reassess Plaintiff's return to work

16   plans at her three-month follow-up.  Tr. 461.  In April 2013, Dr. Chestnut

17   instructed Plaintiff to continue her home exercises, and stated her L4-L5 pathology

18   had stabilized, and she did not need to be seen for her fusion any further as it was

19   "quite satisfactory," although she needed to mobilize her back so she can achieve a

20   reasonable range of motion.  Tr. 476.  Dr. Chestnut did not render an opinion on

ORDER - 12

Plaintiff's functioning at the April 203 visit.  In June 2013, Ms. LaJambe noted Dr. Chestnut found Plaintiff returning to work was premature until her lumbar muscles and range of motion improved, Tr. 508, however it is unclear if this note is based on a statement from Dr. Chestnut or Plaintiff to Ms. LaJambe, as Dr. Chestnut did not include the statement in his notes.  In July 2013, Ms. LaJambe opined Plaintiff could return to work with "the above significant restrictions." Tr. 506.  The notes above the statement indicate Plaintiff had steady incremental improvement in her range of motion, she could perform light household tasks but had some limited range of motion and chores caused some pain and fatigue, and she had reported episodic leg tingling, stiffness, mild tenderness, and limitations in her range of motion, but had a normal gait and sensation on examination.  Tr. 507-08.  There are no additional limitations contained within the notes; as such, Ms. LaJambe's opinion appears to indicate Plaintiff could return to work despite her limitations such as her limited range of motion.

In August 2013, Dr. Pace performed an independent medical examination and opined Plaintiff had a category three back impairment,[4] resulting in Plaintiff

---

[4] A category three dorso-lumbar or lumbosacral impairment indicates the individual has no more than a mild low back impairment, with mild continuous or moderate intermittent objective clinical findings of the impairment but without

ORDER - 13

1 being limited to sitting one hour at a time for a total of six hours in a day, standing

2 up to one hour at a time for a total of six hours in a day, walking up to two hours at

3 a time for a total of six hours in a day, lifting/carrying up to 50 pounds seldomly,

4 25 pounds occasionally, 20 pounds frequently, and 10 pounds continually, no

5 bending, and occasional squatting, kneeling, crawling, climbing, and reaching

6 above the shoulder, and he opined Plaintiff's functioning may improve over time,

7 Tr. 713.  Ms. LaJambe reviewed Dr. Pace's opinion and concurred with his opinion

8 regarding Plaintiff's limitations and the category three impairment finding, and

9 Plaintiff agreed the examination and rating was fair and accurate.  Tr. 493-95.

10      The medical records do not support Plaintiff's argument that the temporary

11 limitations totaled to a period of one year or longer.  Dr. Chestnut's April 2013

12 notes indicated Plaintiff did not need to be seen again and did not contain an

13 opinion regarding any limitations, Tr. 476, and by July 11, 2013, Ms. LaJambe

14 opined Plaintiff could return to work, Tr. 508.  By September 2013, Dr. Pace

15 labeled Plaintiff's back impairment only mild, and opined she was capable of full-

16 time work.  Tr. 493-95.  The opinions from June 4, 2012 through January 10, 2013

17 _____

18 significant x-ray findings or significant objective moderate loss.  Wash. Admin.

19 Code 296-20-280(3), Tr. 20.

20

ORDER - 14

indicate Plaintiff could not return to work, but Plaintiff doses not point to any opinions from February 2013 through June 2013 that state Plaintiff could not work. As such, any error in the ALJ failing to address the temporary opinions would be harmless as the opinions do not meet the duration requirement. *See Molina,* 674 F.3d at 1115. Further, most of the temporary opinions were rendered prior to Plaintiff's October 2012 surgery, and as discussed herein, Plaintiff had improvement in her symptoms after her surgery, which provides further evidence the temporary limitations do not meet the duration requirement.

### 2. Dr. Hander

On May 24, 2013, Dr. Hander, a State agency medical consultant, found Plaintiff's spine disorder and fracture of the vertebral column with spinal cord lesion were severe impairments. Tr. 106. He projected that twelve months after the alleged onset date Plaintiff would be capable of lifting 20 pounds occasionally and 10 pounds frequently; standing/walking six hours in a day; sitting six hours in a day; occasionally climbing ladders/ropes/scaffolds; frequently stooping and crawling; and avoiding concentrated exposure to vibration and hazards. Tr. 106-08. Dr. Hander noted Plaintiff had made satisfactory recovery from her spinal surgery, and there is evidence "she is already capable of light work, less than 12 months after her alleged onset date." Tr. 108. The ALJ gave Dr. Hander's opinion some weight. Tr. 731. As Dr. Hander is a nonexamining source, the ALJ must

ORDER - 15

consider the opinion and whether it is consistent with other independent evidence

in the record.  *See* 20 C.F.R. § 404.1527 (b),(c)(1); *Tonapetyan v. Halter,* 242 F.3d

1144, 1149 (9th Cir. 2001); *Lester*, 81 F.3d at 830-31.

The ALJ summarized Dr. Hander's opinion as limiting Plaintiff to light

work with some postural and environmental limitations.  Tr. 730.  The ALJ found

Dr. Hander's opinion was somewhat consistent with the longitudinal record, but

found the record supports somewhat greater limitations than those opined by Dr.

Hander.  *Id.*  Plaintiff argues Dr. Hander opined Plaintiff had disabling limitations

at the alleged onset date and was only projecting a light RFC 12 months after

onset.  ECF No. 21 at 9.  Plaintiff also argues the reconsideration notice contained

an opinion from Dr. Hander that Plaintiff was "presently unable to work" but she

would be able to perform light work by June 3, 2013, which was less than a year

after her alleged onset date.  *Id.* (citing Tr. 119).  While the RFC was a projection

of Plaintiff's functioning one year after her alleged onset date, Dr. Hander opined

Plaintiff was already capable of light work as of the date of his opinion, May 24,

2013.  Tr. 108.  Further, the notice sent to Plaintiff was an explanation of the

decision; notices are prepared by disability examiners, not the medical consultants,

and as such the notice did not represent an opinion from Dr. Hander.  *See* POMS

ORDER - 16

DI 24501.001.  As Dr. Hander opined Plaintiff was capable of light work with additional limitations, and the ALJ's RFC is more restrictive than Dr. Hander's opinion, the ALJ did not reject Dr. Hander's opinion.

### 3. Dr. Pace

On August 14, 2013, Dr. Pace, an independent medical examiner, examined Plaintiff and rendered an opinion on her functioning.  Tr. 700-15.  Dr. Pace diagnosed Plaintiff with lumbosacral strain and bilateral congenital spondylolysis with grade one spondylolisthesis, status post posterior lumbar interbody fusion of L4 to L5.  Tr. 705.  He opined Plaintiff had a category three back impairment, resulting in Plaintiff being limited to sitting one hour at a time for a total of six hours in a day, standing up to one hour at a time for a total of six hours in a day, walking up to two hours at a time for a total of six hours in a day, lifting/carrying up to 50 pounds seldomly, 25 pounds occasionally, 20 pounds frequently, and 10 pounds continually, no bending, and occasional squatting, kneeling, crawling, climbing, and reaching above the shoulder, and he opined she was at maximum improvement but her functioning may improve over time, Tr. 705, 713. Also in August 2013, Dr. Pace opined Plaintiff cannot perform the bending described in the convenience store cashier position; she cannot perform the bending or repetitive reaching described in the house cleaner, home attendant, nor housekeeper positions; she cannot perform the stooping, bending or twisting

ORDER - 17

1   described in the laundry worker II position; and she could return to work as a

2   general officer clerk or teacher aide II. Tr. 707-15. The ALJ gave Dr. Pace's

3   opinion significant weight. Tr. 731. As Dr. Pace's opinion is contradicted by the

4   opinion of Dr. Hander, Tr. 106-08, the ALJ was required to give specific and

5   legitimate reasons, supported by substantial evidence, to reject Dr. Pace's opinion.

6   *See Bayliss*, 427 F.3d at 1216.

7       The ALJ largely incorporated Dr. Pace's opinion into the RFC, including

8   limiting Plaintiff to sitting and standing for one hour at a time and walking up to

9   two hours at a time, for a total of six hours each in a day. Tr. 728, 731. Plaintiff

10   contends Dr. Pace's opinion amounts to finding Plaintiff required the ability to

11   change positions from sitting to standing at will, which Plaintiff argues is disabling

12   based on the testimony of the vocational expert at the 2015 hearing. ECF No. 21 at

13   11. However, while Dr. Pace opined Plaintiff could only sit or stand for one hour

14   at a time and walk for two hours at a time, Tr. 713, he did not opine Plaintiff needs

15   to change positions at will. Further, at the 2015 hearing, the ALJ asked the

16   vocational expert if an individual could perform Plaintiff's past work if they

17   needed to change positions "at will," and the expert responded there are a number

18   of jobs that allow for the option to alternate sitting and standing but not necessarily

19   "at will." Tr. 84. The expert explained the teacher aide position would have ample

20   time to occasionally sit, stand, and walk but not necessarily at the individual's

ORDER - 18

discretion when they do each, Tr. 84, and similarly the cashier position may have the option to sit or stand but there may be times standing is required and sitting at will would not be possible, Tr. 85.  The expert testified there are no light jobs that have an at will sit/stand option, but multiple sedentary jobs have the sit/stand option.  Tr. 85-86.

At the 2020 hearing, the ALJ posed a hypothetical to the vocational expert that included Dr. Pace's opinion that Plaintiff is limited to standing one hour at a time, sitting for one hour at a time, and walking for two hours at a time, each for a total of six hours.  Tr. 760-61.  The ALJ explained the individual would need to change positions after sitting one hour, standing one hour, or walking two hours.  Tr. 762.  The vocational expert testified that an individual with such limitations could perform Plaintiff's past work as a cashier and sales clerk, and other occupations such as storage facility clerk, fast food worker, and marker.  Tr. 762-63.

The hypothetical posed at the 2020 hearing uses the exact language set forth in Dr. Pace's opinion.  Tr. 713, 760-61.  The hypothetical posed at the 2015 hearing was more restrictive than Dr. Pace's opinion, as Dr. Pace did not opine that Plaintiff needs the ability to alternate positions at will.  Tr. 82-83, 713.  As such, the ALJ did not reject Dr. Pace's opinion regarding Plaintiff's need to change positions during a workday.  Further, the ALJ reasonably relied on the testimony of

ORDER - 19

the vocational expert at the 2020 hearing, and as such the ALJ's step four and step

five findings are supported by substantial evidence.

### 4. Dr. Burkett

On December 14, 2015, Dr. Burkett, a nonexamining doctor, reviewed

Plaintiff's medical records and provided an opinion on her functioning.  Tr. 719-

21.  Dr. Burkett found Plaintiff had antero-spondylolisthesis and compression of

the L4-L5.  Tr. 719.  He opined Plaintiff could sit for one to two hours in an eight-

hour day, and she is capable of a "less than sedentary RFC."  Tr. 710.  Dr. Burkett

further opined Plaintiff is "close to equaling [Listing] 1.02 or 1.04," and pointed to

Dr. Pace's opinion that Plaintiff cannot bend to support his opinion that Plaintiff

cannot bend, twist, or forward flex, and as such she cannot work.  Tr. 720-21

(citing Tr. 706).  The ALJ gave Dr. Burkett's opinion little weight.  Tr. 732.  As

Dr. Burkett is a nonexamining source, the ALJ must consider the opinion and

whether it is consistent with other independent evidence in the record.  *See* 20

C.F.R. § 404.1527 (b),(c)(1); *Tonapetyan,* 242 F.3d at 1149; *Lester*, 81 F.3d at

830-31.

First, the ALJ found Dr. Burkett's opinion was inconsistent with the

longitudinal record.  Tr. 732.  An ALJ may discredit physicians' opinions that are

unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359

F.3d 1190, 1195 (9th Cir. 2004).  The ALJ noted Dr. Burkett's opinion that

ORDER - 20

1    Plaintiff could not perform even sedentary work and never twist, bend, or forward

2    flex is out of proportion with the record, which contains physical examination

3    findings demonstrating normal gait, sensation, reflexes, neurological findings, and

4    balance, negative straight leg raises, generally benign findings, and evidence

5    Plaintiff improved after her surgery.  Tr. 730, 732 (citing Tr. 468, 505, 509, 555-

6    56, 704-05, 966).  Additionally, the ALJ noted that despite Dr. Burkett's disabling

7    December 2015 opinion, Plaintiff did not seek treatment from December 2015

8    through July 2019, when Plaintiff had an examination that demonstrated no

9    weakness or joint pain and a normal gait.  *Id.* (citing Tr. 966).  While Plaintiff

10   offers her own interpretation of the evidence by citing to abnormal findings in the

11   record, ECF No. 21 at 12-13, the ALJ's finding that Dr. Burkett's opinion is

12   inconsistent with the longitudinal record is supported by substantial evidence.

13   　　　Plaintiff also argues the ALJ erred in considering her lack of treatment from

14   December 2015 through July 2019 because she did not have funding to pay for

15   treatment, and did not want to see doctors for opiate medication.  ECF No. 21 at

16   13-14.  However, when Plaintiff was seen to establish care for the first time in

17   years in July 2019, the medical record lists only hypertension as an ongoing

18   medical issue, and while she reported back surgery in 2012, Plaintiff had a normal

19   physical examination and did not report any back pain or other

20   symptoms/limitations related to her back.  Tr. 965-66.  The ALJ reasonably found

ORDER - 21

1  Plaintiff's multi-year gap in treatment and subsequent normal physical examination

2  was inconsistent with Dr. Burkett's opinion.

3       Second, the ALJ found Plaintiff's activities of daily living were inconsistent

4  with Dr. Burkett's opinion.  Tr. 732.  An ALJ may discount a medical source

5  opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v.*

6  *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ noted

7  Plaintiff's activities suggested greater functioning than accounted for in Dr.

8  Burkett's opinion.  Tr. 723.  While Dr. Burkett opined Plaintiff could not perform

9  even sedentary work, and could not stand more than one to two hours in a day,

10  Plaintiff reported walking up to 80 minutes a day with only mild discomfort,

11  walking six miles without exacerbating her symptoms, exercising for 50 minutes at

12  a time, managing her wood stove, grocery shopping, light meal prepping, and

13  cleaning her home for up to one to two hours.  Tr. 730 (citing Tr. 660, 661, 670-71,

14  693, 696-97).  The ALJ's finding that Dr. Burkett's opinion is inconsistent with

15  Plaintiff's activities of daily living is supported by substantial evidence.

16       Third, the ALJ found Dr. Burkett's opinion contained inconsistencies.  Tr.

17  732.  Relevant factors to evaluating any medical opinion include the amount of

18  relevant evidence that supports the opinion, the quality of the explanation provided

19  in the opinion, and the consistency of the medical opinion with the record as a

20  whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*,

ORDER - 22

495 F.3d 625, 631 (9th Cir. 2007).  While Dr. Burkett stated Dr. Pace refused to

opine on Plaintiff's functional limitations, Tr. 721, the ALJ noted Dr. Pace did in

fact opine on Plaintiff's functional limitations, Tr. 732.  Dr. Burkett stated Dr.

Pace's report is "key in this case," and argued the report needed to be fully

considered.  Tr. 721.  However, Dr. Burkett opined that a "proper interpretation" of

Dr. Pace's report would reduce Plaintiff's RFC to sustaining no more than two to

four hours of sitting, which is a "less than sedentary" RFC.  Tr. 720.  Dr. Burkett's

statement that Dr. Pace's opinion equates to a less than sedentary RFC is

inconsistent with the evidence as Dr. Pace opined Plaintiff was capable of

performing light work, including sitting up to six hours per day, with additional

limitations, Tr. 713.  While Dr. Burkett stated he could not think of any jobs

Plaintiff could perform with a less than sedentary RFC, Tr. 720, Dr. Pace opined

Plaintiff was capable of working as a general office clerk and teacher aide, Tr. 709,

711.  Plaintiff concedes Dr. Burkett's opinion contained internal inconsistencies,

but argues the inconsistencies should not detract from the opinion.  ECF No. 21 at

14. As Dr. Burkett stated Dr. Pace's opinion is the key to the case, yet Dr.

Burkett's summary of Dr. Pace's opinion is inconsistent with the evidence, the

ALJ reasonably rejected Dr. Burkett's opinion because of the inconsistencies.

Lastly, the ALJ gave more weight to Dr. Pace's opinion than Dr. Burkett's

opinion.  Tr. 732.  An ALJ may choose to give more weight to an opinion that is

ORDER - 23

more consistent with the evidence in the record.  20 C.F.R. § 404.1527(c)(4).

Generally, an ALJ should accord more weight to the opinion of an examining

physician than to that of a non-examining physician.  *See Andrews v. Shalala*, 53

F.3d 1035, 1040-41 (9th Cir. 1995).  The ALJ gave significant weight to the

opinion of Dr. Pace, who had the opportunity to examine Plaintiff.  Tr. 731.  The

ALJ found Dr. Pace's opinion was generally consistent with the evidence.  *Id.*  The

ALJ reasonably gave more weight to Dr. Pace's opinion than she gave to Dr.

Burkett, who did not examine Plaintiff, and whose opinion she found was

inconsistent with the evidence.  Tr. 732.  Plaintiff is not entitled to remand on these

grounds.

**B. Step-Three**

Plaintiff contends the ALJ erred by finding that Plaintiff's back impairment

did not meet or equal Listing 1.04A.  ECF No. 21 at 14-15.  At step three, the ALJ

must determine if a claimant's impairments meet or equal a listed impairment.  20

C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments "describes each of the

major body systems impairments [which are considered] severe enough to prevent

an individual from doing any gainful activity, regardless of his or her age,

education or work experience."  20 C.F.R. § 404.1525.  "Listed impairments are

purposefully set at a high level of severity because 'the listings were designed to

operate as a presumption of disability that makes further inquiry unnecessary.' "

*Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy*, 758 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."  *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."  *Tackett*, 180 F.3d at 1099.  However, " '[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.' "  *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)),

ORDER - 25

1  The claimant bears the burden of establishing his impairment (or

2  combination of impairments) meets or equals the criteria of a listed impairments.

3  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

4  articulation of the reason(s) why the individual is or is not disabled at a later step in

5  the sequential evaluation process will provide rationale that is sufficient for a

6  subsequent reviewer or court to determine the basis for the finding about medical

7  equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at

8  *4 (effective March 27, 2017).

9  Here, the ALJ found Plaintiff's back impairment did not meet or equal a

10 listing, including Listing 1.04A.  Tr. 728.  In order to meet Listing § 1.04A, a

11 claimant must establish: (1) evidence of nerve root compression characterized by

12 neuro-anatomic distribution of pain; (2) limitations of motion of the spine; (3)

13 motor loss ("atrophy with associated muscle weakness or muscle weakness")

14 accompanied by sensory or reflex loss, and (4) if there is involvement of the lower

15 back, positive straight-leg raising test (sitting and supine).  *Gnibus v. Berryhill*,

16 2017 WL 977594, at *4 (E. D. Cal. March 13, 2017) (finding Listing 1.04A was

17 met) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show

18 that his impairment matches a listing, it must meet *all* of the specified medical

19 criteria.  An impairment that manifests only some of those criteria, no matter how

20 severely, does not qualify.")).  Further, Plaintiff must establish the impairment

ORDER - 26

satisfies the 12-month durational requirement. *Id.* at *7 (internal citations omitted); *see also Stewart v. Colvin*, 674 F.App'x 634, 635 (9th Cir. 2017) (Plaintiff failed to carry his burden of establishing that he met all of the criteria for Listing 1.04A).

The ALJ found Plaintiff does not meet Listing 1.04 because she does not have the necessary neurological examination findings and because she is able to ambulate effectively. Tr. 728. While ineffective ambulation is not a requirement of Listing 1.04A, evidence of neuro-anatomic distribution of pain, and motor loss with reflex or sensory loss is required, as are positive straight leg raises when the impairment involves the lower back. *See* 20 C.F.R. Part 404, Subpt. P, Appx. 1, § 1.04(A). Plaintiff argues she meets Listing 1.04A but points to straight leg raise tests that indicate positive results but do not differentiate between sitting and supine tests. ECF No. 21 at 15 (citing Tr. 334, 350, 367, 379). As Listing 1.04A requires both supine and seated positive straight leg raises, Plaintiff has not met her burden in demonstrating she meets Listing 1.04A. Plaintiff does not set forth any argument as to how her impairment is equal in severity to Listing 1.04A beyond stating Dr. Burkett opined Plaintiff was "close to equaling Listing 1.04." As the ALJ's rejection of Dr. Burkett's opinion was supported by substantial evidence for the reasons discussed *supra,* Plaintiff has not met her burden in demonstrating her

ORDER - 27

impairment is equal in severity to Listing 1.04A.  Plaintiff is not entitled to remand on these grounds.

## C. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 21 at 16-20.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81

1    F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the

2    ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The

3    clear and convincing [evidence] standard is the most demanding required in Social

4    Security cases."  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc.*

5    *Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

6            Factors to be considered in evaluating the intensity, persistence, and limiting

7    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

8    duration, frequency, and intensity of pain or other symptoms; 3) factors that

9    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

10   side effects of any medication an individual takes or has taken to alleviate pain or

11   other symptoms; 5) treatment, other than medication, an individual receives or has

12   received for relief of pain or other symptoms; 6) any measures other than treatment

13   an individual uses or has used to relieve pain or other symptoms; and 7) any other

14   factors concerning an individual's functional limitations and restrictions due to

15   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

16   404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

17   individual's record," to "determine how symptoms limit ability to perform work-

18   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

19           The ALJ found that Plaintiff's medically determinable impairments could

20   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

ORDER - 29

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 729.

### 1.  Longitudinal Record

The ALJ found Plaintiff's symptom claims were inconsistent with the

longitudinal record.  Tr. 730-31.  An ALJ may not discredit a claimant's pain

testimony and deny benefits solely because the degree of pain alleged is not

supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856

(9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v.

Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Medical evidence is a relevant factor,

however, in determining the severity of a claimant's pain and its disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Minimal objective evidence

is a factor which may be relied upon in discrediting a claimant's testimony,

although it may not be the only factor.  *See Burch*, 400 F.3d at 680.

The ALJ noted that while Plaintiff had some abnormalities on examination,

the medical records show Plaintiff had intact hardware after her surgery, Tr. 468,

and the records demonstrate Plaintiff had improvement in her symptoms after the

surgery, as evidenced by Plaintiff often having normal lower extremity sensation,

strength, deep tendon reflexes, neurological findings, balance, and gait, and

negative straight leg raises.  Tr. 730 (citing Tr. 468, 505, 509, 555-56, 704-05,

966).  Plaintiff was observed as being in no acute distress at multiple appointments.

ORDER - 30

Tr. 730 (citing Tr. 473, 487, 501, 505, 509).  When seen to establish care in July

2019, after not seeking care for several years, Plaintiff had a generally normal

physical examination and did not report any pain or limitations due to her back

impairment.  Tr. 730 (citing Tr. 965-66).  Despite Plaintiff's allegation that she has

difficulty walking, she has not reported using an assistive device and has never

been prescribed an assistive device nor been observed using one.  Tr. 730-31

(citing Tr. 505, 509).  While Plaintiff offers an alternative interpretation of the

evidence, the ALJ reasonably concluded that Plaintiff's symptom claims were

inconsistent with the longitudinal record.  This finding is supported by substantial

evidence and was a clear and convincing reason, along with the other reasons

offered, to discount Plaintiff's symptoms complaints.

### 2.  Activities of Daily Living

The ALJ found Plaintiff's symptom claims were inconsistent with her

activities of daily living.  Tr. 730.  The ALJ may consider a claimant's activities

that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

spend a substantial part of the day engaged in pursuits involving the performance

of exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

ORDER - 31

1  the claimant reports participation in everyday activities indicating capacities that

2  are transferable to a work setting" or when activities "contradict claims of a totally

3  debilitating impairment." *Molina*, 674 F.3d at 1112-13.

4      The ALJ noted Plaintiff was able to walk for 80 minutes with only mild

5  discomfort, carry her granddaughter, walk six miles without exacerbating her

6  symptoms, engage in daily walks, and participate in 50 minutes of light

7  conditioning and stretching.  Tr. 730 (citing Tr. 661, 693, 696-97).  Plaintiff also

8  reported resuming her customary activities of daily living in her home including

9  managing her wood stove, grocery shopping, and preparing light meal prep, and

10  reported pain/discomfort of a two to four on a scale up to 10 when engaging in the

11  activities.  Tr. 660, 670.  She reported she had progressed to being able to clean her

12  home for one to two hours.  Tr. 671.  Plaintiff also worked part-time as a bartender

13  in September 2013.  Tr. 730 (citing Tr. 493).  Plaintiff argues her activities of daily

14  living are not inconsistent with her allegations, however the ALJ reasonably found

15  Plaintiff's ability to engage in activities, including walking six miles without

16  exacerbating her symptoms is inconsistent with her allegations of a disabling back

17  impairment.  On this record, the ALJ reasonably concluded that Plaintiff's

18  symptom claims were inconsistent with her activities of daily living.  This finding

19  is supported by substantial evidence and was a clear and convincing reason to

20  discount Plaintiff's symptoms complaints.

1    *3. Lack of Treatment*

2    The ALJ found Plaintiff's symptom claims were inconsistent with her lack

3    of treatment.  Tr. 730-31.  An unexplained, or inadequately explained, failure to

4    seek treatment or follow a prescribed course of treatment may be considered when

5    evaluating the claimant's subjective symptoms.  *Orn*, 495 F.3d at 638.  And

6    evidence of a claimant's self-limitation and lack of motivation to seek treatment

7    are appropriate considerations in determining the credibility of a claimant's

8    subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir.

9    2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished

10    opinion) (considering why plaintiff was not seeking treatment).  Disability benefits

11    may not be denied because of the claimant's failure to obtain treatment she cannot

12    obtain for lack of funds.  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

13    In May 2014, Plaintiff reported she had a TENS unit that helped with her

14    pain, but reported she was not using it.  Tr. 487, 731.  Plaintiff did not seek

15    treatment from June 2014 through July 2019.  Tr. 730.  When seen to establish care

16    in July 2019, Plaintiff had a generally normal physical examination and did not

17    report any pain or limitations due to her back impairment.  Tr. 730 (citing Tr. 965-

18    66).  Plaintiff argues she did not seek care from June 2014 through July 2019

19    because she did not have the funds to pay for treatment or insurance, and she did

20    not want to see doctors for opiate medication.  ECF No. 21 at 19.  However,

ORDER - 33

1  Plaintiff does not offer an explanation as to why she did not report any symptoms

2  or limitations due to her back impairment when seen to establish care in July 2019.

3  On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were

4  inconsistent with Plaintiff's lack of treatment.  This finding is supported by

5  substantial evidence and was a clear and convincing reason to discount Plaintiff's

6  symptoms complaints.  Further, any error in the ALJ failing to consider Plaintiff's

7  reasons for not seeking treatment would be harmless, as the ALJ gave other clear

8  and convincing reasons to reject Plaintiff's symptom claims.  *See Molina,* 674 F.3d

9  at 1115.  Plaintiff is not entitled to remand on these grounds.

10  **D. Lay Witness Evidence**

11      Plaintiff challenges the ALJ's consideration of the lay witness statement of

12  Plaintiff's father, Lindell Coots; Plaintiff's mother, Sharon Coots; Plaintiff's friend

13  whose name is not legible; Plaintiff's daughter, Neshayla Daniel; Plaintiff's friend,

14  Ellen Lake; Thomas P., Plaintiff's son; and Michael Houser, Plaintiff's boyfriend.

15  ECF No. 21 at 20-21.  An ALJ must consider the statement of lay witnesses in

16  determining whether a claimant is disabled.  *Stout,* 454 F.3d at 1053.  Lay witness

17  evidence cannot establish the existence of medically determinable impairments,

18  but lay witness evidence is "competent evidence" as to "how an impairment affects

19  [a claimant's] ability to work."  *Id.*; 20 C.F.R. § 404.1513; *see also Dodrill v.*

20  *Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a

ORDER - 34

position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

The lay witness statements generally restate Plaintiff's symptom claims and limitations, such as reports Plaintiff's back impairment causes pain, difficulty standing, bending, twisting, sitting, walking, lifting, and completing activities. Tr. 954-60. The ALJ considered all of the lay witness statements, and summarized each in the decision. Tr. 732-34. The ALJ gave little weight to the lay witness statements. Tr. 732-34.

The ALJ rejected the lay witness statements for the same reasons she rejected Plaintiff's symptom claims, as the ALJ found the lay witness statements were also inconsistent with the longitudinal record, including the treatment record after Plaintiff's surgery, Plaintiff's generally benign presentation, and Plaintiff's activities of daily living. Tr. 732-34. Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness's testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting

testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness"). As the Court finds the ALJ gave clear and convincing reasons to reject Plaintiff's symptom claims, the ALJ also gave germane reasons to reject the lay witness testimony. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED November 12, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 36